UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. LUCIANO CAMBEROS-VILLAPUDA, Defendant. | 4:13-CR-40104-KES-1 ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant, Luciano Camberos-Villapuda, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 145. The Federal Public Defender filed a supplement to Camberos-Villapuda's motion. Docket 162. Plaintiff, the United States of America, opposes the motion. Docket 166. For the following reasons, Camberos-Villapuda's motion is denied.

## BACKGROUND

On March 26, 2015, Camberos-Villapuda was found guilty of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 18 U.S.C. §§ 841(a)(1) and 846. Docket 80; Docket 112 at 1. For this crime, the court sentenced Camberos-Villapuda to a term of life in prison. Docket 112 at 2. Camberos-Villapuda is incarcerated at United States Penitentiary Lee (USP Lee) a high security U.S. penitentiary with an adjacent minimum security satellite camp. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 16, 2024) (enter BOP register number 13550-273); *USP Lee*, Fed. Bureau of Prisons,

1

https://www.bop.gov/locations/institutions/lee/ (last visited July 16, 2024). The total population at USP Lee is 1,373 persons. *Id.*

On July 6, 2020, Camberos-Villapuda filed a request for compassionate release with the warden of USP Lee. Docket 156 at 122. His request was denied on July 29, 2020. *Id.* at 123. Camberos-Villapuda filed this motion for compassionate release on November 13, 2023. Docket 145. The Federal Public Defender filed a supplement to Camberos-Villapuda's motion on April 11, 2024. Docket 162. The day prior to filing the supplement, on April 10, 2024, the Federal Public Defender submitted a request for compassionate release to the warden of USP Lee. *See* Docket 165 at 1 (stating that the warden had received a compassionate release request dated April 10, 2024). That request was denied on April 29, 2024. *Id.* at 1–2. The government opposes Camberos-Villapuda's motion. Docket 166.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C § 3582(c). One narrow exception is the First Step Act (FSA), passed by Congress in 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. *Id.* Compassionate release allows defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must consider the Section § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing

Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires that "extraordinary and compelling reasons" warrant a sentence reduction and that the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)–(b). The policy statement was amended on November 1, 2023, to reflect the FSA's empowerment of federal courts to adjudicate defendant-initiated motions for compassionate release. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expanded the list of extraordinary and compelling reasons justifying compassionate release from federal detention. *See id.; 2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited Jan. 12, 2024).

I.   **Administrative Exhaustion**

Before the FSA's passage, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. *See* 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Camberos-Villapuda did not submit his request for a sentence reduction to the warden prior to submitting his motion for compassionate release. *See* Docket 145 (showing that the motion for compassionate release was made on November 13, 2023); Docket 165 at 1 (showing that request to warden was made on April 10, 2024, almost 5 months motion for compassionate release was made). But the government does not challenge Camberos-Villapuda's motion on the grounds of failure to exhaust and has thereby waived the issue. *See* Docket 166 at 1–2; *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirements as "mandatory claim-processing rule[s]" that "must be enforced *so long as the opposing party properly raises it*." (emphasis added)); *see also United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) ("Not a jurisdictional limitation, § 3582(c)(1)(A)'s exhaustion requirement is a 'claim-processing rule[]' and accordingly 'may be waived or forfeited' by the government." (quotation omitted)). Thus, the court will review Camberos-Villapuda's motion on the merits.

## II.     Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814. The first four categories pertain to a

defendant's: (1) medical circumstances; (2) advanced age and deteriorating health; (3) family circumstances; and (4) victimization by correctional staff. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an unusually long sentence, served at least 10 years, and a nonretroactive change in sentencing law produces a gross disparity between the sentence being served and the sentence likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

    Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

    The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders predating amendment 814 to § 1B1.13. *E.g.*, *United States v. Shields*, 3:07-CR-30106-01, 2021 WL 765001, at *2–3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02, 2021 WL 534517, at *2–3 (D.S.D. Feb. 12, 2021); *United States v. Adame,* 4:18-CR-40117-05, 2020 WL 7212096, at *2–3 (D.S.D.

Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01, 2020 WL 7029873, at *2–3 (D.S.D. Nov. 30, 2020). Amendment 814 retained much of the language from the prior version of the Sentencing Commission's policy statement, and our prior cases inform our judgement to the extent they are consistent with the current version of the policy statement. *See* U.S.S.G. § 1B.13, amend. 814. Before Amendment 814, the court assumed that the factors laid out in the Sentencing Commission's policy statement applied to motions for compassionate release brought by prisoners as well as the Director of the Bureau of Prisons. *See, e.g.*, *Muhs*, 2021 WL 534517, at *3. Following Amendment 814, the factors courts are to consider now explicitly apply to motions for compassionate release brought by prisoners. *See id.*; U.S.S.G. § 1B.13(a).

      Camberos-Villapuda argues that an extraordinary and compelling reason for a sentence reduction exists because he received an unusually long sentence and an intervening change in law has produced a gross disparity between his life sentence and the sentence he would likely receive today. *See* Docket 162 at 8–9 (citing U.S.S.G. § 1B1.13(b)(6)). The court does not consider the categories for medical circumstances, family circumstances, or victimization by correctional staff, because none of those categories apply here. *See* U.S.S.G. § 1B1.13(b)(1)–(4). Because Camberos-Villapuda does not argue that a combination of circumstances not explicitly addressed by the guidelines warrant his release, the court does not consider the catch-all category either. *See generally* Docket 162; U.S.S.G. § 1B1.13(b)(5).

Section § 1B1.13(b)(6) requires that a non-retroactive change in law produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." In determining whether Camberos-Villapuda made the necessary showing, the court will compare the mandatory minimum Camberos-Villapuda faced at the time he was sentenced to the mandatory minimum he would have faced at the time he made his motion. Second, the court compares Camberos-Villapuda's guideline range at the time he was sentenced to the guideline range he would have had at the time he made his motion. Third, the court determines whether these comparisons show a "gross disparity" between the two.

The court begins with the mandatory minimums. On March 2015, a jury convicted Camberos-Villapuda of one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 846. Docket 80; Docket 112. Both at the time of Camberos-Villapuda's sentencing and at the time Camberos-Villapuda filed his instant motion, a defendant convicted of such offense would ordinarily face a mandatory minimum sentence of ten years, with a maximum sentence of up to life. *See* 21 U.S.C. § 841(b)(1)(A)(2013); 21 U.S.C. § 841(b)(1)(A) (2024). But at the time of Camberos-Villapuda's sentencing, a defendant faced an increased mandatory minimum sentence depending on his prior criminal history: if a defendant had a "prior conviction for a felony drug offense," then the mandatory minimum sentence increased to twenty years. *See* 21 U.S.C. § 841(b)(1)(A) (2013). And if a defendant had "two or more prior convictions for a felony drug offense," the

7

defendant faced a mandatory minimum sentence of life. *See id.* Both at the time of Camberos-Villapuda's sentencing and at the time he filed his instant motion, "felony drug offense" meant "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (2013); 21 U.S.C. § 802(44) (2024).

For either of these sentencing enhancements to apply, the Government must file an information with the court prior to trial or before entry of a plea of guilty "stating in writing the previous convictions" justifying such enhancement. 21 U.S.C. § 851(a)(1).

Here, prior to trial, the Government filed an information under § 851, alleging Camberos-Villapuda had the following two convictions:[1]

1) Possession or purchase of cocaine base of sale in the Superior Court of California, County of Los Angeles, case number BA003810, sentenced on or about October 6, 1989.

2) Transportation and/or selling a dangerous drug in Coconino County Superior Court, Flagstaff, Arizona, case number S-0300-CR-20040312, sentenced on or about December 20, 2004.

Docket 58. Camberos-Villapuda agreed he had these two convictions. Docket 107. Both convictions qualified as a "felony drug offense" because both offenses were punishable by imprisonment for more than one year and prohibited

---

[1] The Government attempted to amend its § 851 notice by adding another conviction after trial but before sentencing. Docket 104. Camberos-Villapuda objected, and the Government withdrew its amendment because the defendant agreed to the Government's original § 851 notice regarding the existence of the original two convictions. Docket 105; Docket 107; Docket 108.

8

conduct related to narcotic drugs. *See* Cal. Health & Safety Code § 11351.5 (West 1989) (making punishable for "three, four, or five years" the sale or purchase for purpose of sale cocaine base); Ariz. Rev. Stat. Ann. § 13-3407(A)(7), B(7) (West 2004) (making the sale and transport of a dangerous drug a Class 2 Felony); Ariz. Rev. Stat. Ann. § 13-702 (West 2004) (providing for a four year mandatory minimum sentence for Class 2 felony). Based on these two prior felony drug offense convictions, Camberos-Villapuda faced a mandatory minimum sentence of life. *See* 21 U.S.C. § 841(b)(1)(A) (2013). The court sentenced Camberos-Villapuda to life imprisonment. Docket 112 at 2.

Since the time of Camberos-Villapuda's sentencing, Congress amended 21 U.S.C. § 841(b)(1)(A)(vii) so that a 25-year mandatory minimum applies where a defendant has been convicted of a "serious drug felony," instead of the previous "felony drug offense." *See* 21 U.S.C. § 841(b)(1)(A)(vii).

> The term "serious drug felony" means an offense described in section 924(e)(2) of title 18 for which— (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

21 U.S.C. § 802(57). Thus, the amended statute not only reduces the mandatory minimum from life to 25 years in prison but also limits the drug offenses that trigger the mandatory minimum by adding two new requirements: that a term of more than 12 months in prison be served, and that release from prison be within 15 years of the instant offense. *See id.*

In Camberos-Villapuda's case, application of the mandatory minimum sentence was based on the 1989 California conviction for possession or

9

purchase of cocaine base for sale, and the 2004 Arizona conviction for transportation and/or selling a dangerous drug. *See* Docket 58 at 1; Docket 107. The 1989 offense would not qualify as a "serious drug felony" today. *See* 21 U.S.C. § 802(57). In the case of his 1989 conviction, Camberos-Villapuda only served 365 days in jail with 180 days in jail suspended, and thus did not serve more than 12 months. *See* Docket 109 ¶ 49. Moreover, the defendant's release from custody occurred more than 15 years prior to the instant offense. *See id.*

The 2004 conviction presents a more complicated issue. Camberos-Villapuda received a 5-year custody sentence and served approximately 4 years in custody. *See id.* ¶ 51, 60. Camberos-Villapuda argues that the 2004 conviction does not qualify as a serious drug felony because the Arizona statute under which he was convicted is overbroad in prohibiting two substances not included in the federal definition of a serious drug felony. *See* Docket 162 at 12 (citing Ariz. Rev. Sat. § 13-3401(6)(b)(xxii), c(li) (2004)). Whether this second conviction qualifies as a serious drug felony determines whether a 10- or 15-year mandatory minimum sentence would apply under today's law. *See* 21 U.S.C. § 841(b)(1)(A)(vii).

The court need not resolve this issue, however, because at the second step of the analysis, Camberos-Villapuda's guideline range would be identical were he convicted today. In his presentence report, the base offense level for Camberos-Villapuda's offense was calculated at 38 using a quantity of more than 90,000 kilograms of marijuana equivalent. Docket 109 ¶ 38. Under

10

today's sentencing guidelines, the drug quantity for which Camberos-Villapuda was found responsible, 187.7 pounds of methamphetamine, would still result in a base offense level of 38. *See id.* ¶ 33; U.S.S.G. § 2D1.1(c)(1). Additionally, Camberos-Villapuda would receive a two-level enhancement for possession a firearm. *See* Docket 109 ¶ 39; U.S.S.G. § 2D1.1(b)(1). And finally, a four-level adjustment for his role in the offense would still result in an adjusted offense level of 44. *See* Docket 109 ¶¶ 41, 43, 46; U.S.S.G. § 3B1.1(a). Because the guideline sentencing table caps the offense level at 43, Camberos-Villapuda's offense level of 43, when combined with any criminal history category, including Camberos-Villapuda's category of II, results in a guideline range of life in prison. *See* U.S.S.G. Chapter 5, Part A. This is the same guideline range that applied at the time of his sentencing. Docket 109 ¶ 73. Thus, the change in law at 21 U.S.C. § 841(b)(1)(A)(vii) altering the statutory mandatory minimums does not result in a "gross disparity between the sentence being served and the sentence likely to be imposed" at the time of Camberos-Villapuda's motion, and no extraordinary and compelling reason for a sentence reduction exists. *See* U.S.S.G. § 1B1.13(b)(6).

### III.    Sentencing Factors of § 3553(a)

The § 3553(a) sentencing factors confirm that a sentence reduction is not warranted under the facts of Camberos-Villapuda's case. *See* 18 U.S.C. § 3582(c)(1)(A). The first factor the court must weigh is "the nature and circumstances of the offense and the history and characteristics of the defendant[.]" 18 U.S.C. § 3553(a)(1). By all accounts, Camberos-Villapuda was

11

involved in a conspiracy to distribute very large quantities of methamphetamine. *See* Docket 109 ¶ 6–33. In the Pre-Sentence Report (PSR), he is implicated in many sizeable transactions involving the drug. *Id.* ¶ 12–17, 19–20, 22–33. One witness "estimated she received approximately 60 pounds of methamphetamine from the defendant throughout the conspiracy[]" and believed that at the time of Camberos-Villapuda's arrest, she owed him $118,000. *Id.* ¶ 30. Another methamphetamine dealer to whom Camberos-Villapuda distributed was arrested with "355.4 grams of pure methamphetamine" that had been provided by Camberos-Villapuda. *Id.* ¶ 32. In total, the defendant was found responsible for distributing 187.7 pounds of methamphetamine. *Id.* ¶ 33. The nature and circumstances of the offense were characteristic of a drug distribution conspiracy that was large in absolute and relative terms and caused great harm. The first factor weighs strongly against Camberos-Villapuda's motion.

Camberos-Villapuda's personal characteristics do not change the court's calculus. Camberos-Villapuda was born in Durango, Mexico in 1967. *Id.* ¶ 57. He is one of nine siblings. *See id.* Camberos-Villapuda worked on his family ranch as a child and did not receive formal education until he was 12 years old. *Id.* ¶ 58. He described his childhood as good, and that although his family was poor, they worked hard. *Id.* ¶ 58. His father was shot and killed in 1983. *Id.* ¶ 57. Camberos-Villapuda immigrated to the United States at the age of 21, and initially lived in Los Angeles, where he was convicted at the age of 22 of his first drug crime. *Id.* ¶ 49, 59. In 1991, Camberos-Villapuda was convicted of voluntary manslaughter, and was deported in 1997 following his sentence. *Id.*

12

¶ 50, 59. He soon returned to California, where he lived with his wife, with whom he has two children. *Id.* ¶ 59–60. In 2001, the family relocated to Phoenix, Arizona, where in 2004 Camberos-Villapuda was again convicted of distributing drugs. *Id.* ¶ 51, 60. Following a four-year sentence, Camberos Villapuda was again deported. *Id.* He returned to the United States, was deported for a third time in 2010, and then returned to the United States and moved to Denver later that same year. *Id.* ¶ 60–61. Camberos-Villapuda has been self-employed throughout his life, and his work has included manual labor and automobile repair. *Id.* ¶ 69. The court understands that Camberos-Villapuda faced challenges as a young person, including poverty and his father's murder. Nonetheless, Camberos-Villapuda has been involved with drug distribution for almost his entire adult life, and his personal characteristics indicate that he is a lifelong drug trafficker.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). If the court granted a sentence reduction, the objectives of respect for the law and just punishment would not be served, because the sentence would not be long enough to account for the vast drug conspiracy of which Camberos-Villapuda was the leader. The remaining § 3553(a) factors weigh against a sentence reduction as well. If the court were to grant compassionate release, similar conduct in others would not be deterred because Camberos-Villapuda's punishment would not be severe enough to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). The sentence imposed must also "protect the public

13

from further crimes of the defendant[.]" *See* 18 U.S.C. § 3553(a)(2)(C). Given that Camberos-Villapuda has resumed and escalated his drug trafficking after each prior conviction, the court finds that a sentence reduction would not protect the public.

After considering the § 3553(a) factors, the court finds that they weigh against Camberos-Villapuda and are incompatible with his request for a sentence reduction.

## CONCLUSION

Camberos-Villapuda failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 145) is denied.

Dated August 14, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE